ROTAPRINT MACHINES, INC. *v.* UNITED STATES

No. 5848.—Invoices dated Berlin, Germany, July 8, 1939, etc.
Entered at New York, N. Y., August 1, 1939, etc.
Entry No. 37418, etc.

Third Division, Appellate Term

(Decided April 5, 1943)

*Daniel P. McDonald* for the appellant.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellee.

Before CLINE; KEEFE, and EKWALL, Judges

CLINE, Judge: This is an application for review of the decision of the trial court in *Rotaprint Machines, Inc.* v. *United States*, 9

Cust. Ct. 500, Reap. Dec. 5669. The merchandise under consideration consists of duplicating machines exported by Rotaprint Akt.–Ges., of Berlin, Germany, the dates of certification of the invoices being March 30, 1939, April 4, 1939, and July 8, 1939. Reappraisement No. 139612–A covers two model Rk1 machines which were entered at 1,021.25 reichsmark each, plus packing, and were appraised on the basis of foreign value at 2,040 reichsmark each, plus packing. The other two appeals cover model R–30 machines. In Reappraisement No. 139611–A, the machines were entered at 3,900 reichsmark each, plus packing, and less 247.50 reichsmark for composition on two machines, and were appraised on the basis of foreign value at 6,978.50 reichsmark each, plus packing. The machines covered by Reappraisement No. 139613–A were entered at 3,900 reichsmark each, plus packing, and were appraised on the basis of foreign value at 7,226 reichsmark each, plus packing.

The trial court held that there was no export value, as sales to the United States were restricted to two agents, and that, inasmuch as sales of the machines in the home market to dealers in Germany were restricted by the manufacturer with respect to the resale price, the market in Germany was controlled, and, therefore, the goods had no foreign value, although the sales to consumers were not restricted, except as to exportation outside of Germany.

After finding that there was neither a foreign value nor an export value for the merchandise, the trial court considered the evidence on United States value and found that it was insufficient to establish such value. There was no evidence introduced with respect to cost of production of the machines. Since the importers failed to make out a *prima facie* case, the trial court dismissed the appeals.

The Government failed to file an appeal from the action of the trial court in finding that there was no foreign value for the merchandise and the only point argued before us was with respect to the existence of an export value. The appellant contends that the evidence introduced proves that there is an export value with respect to two of the shipments and that the entered value is such value.

The importer called Mr. Edgar Floer as a witness, who testified that he is president and general manager of the importing company; that he had a contract with the manufacturer, dated May 12, 1939, wherein he was allotted the sole right of sales of the imported products in the states of New York, New Jersey, Pennsylvania, Connecticut, Massachusetts, Rhode Island, Maine, Vermont, and New Hampshire for a term of 1 year. A copy of this contract was introduced in evidence and marked exhibit 1. He testified further that he had no agreement whereby the manufacturer was forbidden to sell this merchandise freely to persons in other states than those listed in his contract; that the manufacturer was free to do business outside of

those states; that he received shipments covered by Reappraisements 139612–A and 139613–A before the agreement of May 12, 1939, became effective; that American Rotaprint Corp. of Cleveland, Ohio, formerly had a contract with the manufacturer whereby the sales to all of the United States were restricted to that company but it expired on March 20, 1939, and the factory would not make a new contract until the American Rotaprint Corp. contract had expired and it took 6 or 8 weeks to put in writing his contract after it had been verbally agreed upon; that prior to June 1, 1939, he had no agreement in writing with the manufacturer with regard to the exclusive agency. When asked to state how he knew the manufacturer was doing business with some other firm in the United States during the period between March 20, 1939, and the effective date of his contract, June 1, 1939, the witness said:

A. Prior to our own importations, we were purchasing these same equipments and supplies from another organization in another state not mentioned in this contract, and at the termination of their contract with the manufacturer we obtained our contract, and, simultaneously, he signed a contract of the same wording but applying to other states; and he continued doing business at the same time we did, and we used the same forwarding agent and customhouse broker, and I do know entries were made, to the best of my knowledge, during those few months.

The witness testified further that the machines he purchased were not complete when they were imported, since they contained no electric motors and in some cases no inking rollers and inking attachments, which were purchased from a domestic concern; that in making sales in the United States he agreed with the purchasers to train operators for the machines and to service them for a period of 1 year.

On cross-examination the witness testified that, at or prior to March 20, 1939, he had a verbal acceptance of his contract. He testified as follows:

X Q. When did you first commence discussing the terms of the contract with the manufacturer?—A. I would say in the Fall of 1938.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Your wishes, as early as the Fall of 1938, were to obtain a territorial distributing agency in this country for the foreign manufacturer?—A. Yes.

X Q. And you made that known to Mr. Wedeman before he went to Germany in 1938?—A. Yes.

X Q. And when were you first informed that you could obtain such an agency?—A. I believe verbally prior to March 20, 1939.

X Q. Well, verbally prior to March 20, 1939; verbally from whom?—A. Through Mr. Wedeman upon his return from Europe.

X Q. When did he return from Europe?—A. The latter part of 1938. I am not sure of my dates.

X Q. Now, what was this verbal arrangement?—A. I would say essentially the same as incorporated in the contract which we received, and which I showed before, dated May 12, 1939.

X Q. Exhibit No. 1 that I show you (handing to witness)?—A. Yes; that is the one.

The importer introduced also exhibit 4, which is an affidavit of Theo. Harbeck, director of the foreign sales department and comanager of the manufacturing company. It contains the following statements:

(17). That no person, firm or corporation in the United States has now, nor has had since March 20, 1939, an exclusive sales agreement for the whole of the United States, with the manufacturer.

(18). That since March 20, 1939 to date the machine known as R–30 has been freely offered and sold to our distributing agencies in the United States, i. e. Rotaprint Machines, Inc., New York, and American Rotaprint Corporation, Cleveland, Ohio, without electric motor, but with ink rollers at 3,900 Reichmarks, f. o. b. Factory, not including cost of packing and inland freight to port of shipment.

\* \* \* \* \* .\* \*

(20). That since March 20, 1939 to date the machine known as RKL has been freely offered and sold to our distributing agencies in the United States (see paragraph 18) without electric motor but with automatic water and ink fountain at 1,021.25 Reichmarks, f. o. b. Factory, not including cost of packing and inland freight to port of shipment.

At the close of the importer's case, counsel for the Government moved to dismiss the appeals on the ground that the importer had not made out a *prima facie* case. This motion was taken under advisement by the judge presiding at the trial. The Government then introduced, as collective exhibit 5, a report of customs agent A. P. Giessler, dated at Detroit, Mich., December 11, 1941. The customs agent states that he called at the office of American Rotaprint Corporation of Cleveland, Ohio, and was told that in 1935 the firm entered into a contract with the manufacturer in which his firm was given the exclusive agency for the entire United States for the sale of such machines; that the agency was terminated by the German company by notice given on January 24, 1938, to be effective May 1, 1938, but his firm continued to be the sales representative of the German firm throughout the year 1938 but did not import any R–30 or Rk1 models in 1939.

The customs agent reports also that he inspected the records of the collector of customs and found that the American Rotaprint Corporation entered five shipments of printing machine parts purchased from the German manufacturer. Two of those entries covered merchandise imported during the year 1938 and the remaining three entries covered importations made during 1939, but there were no records of any importation in 1939 of models R–30 or Rk1 machines.

The appellant contends that the merchandise covered by reappraisements 139612–A and 139613–A, exported from Germany on March 30, 1939, and April 4, 1939, was shipped when the manufacturer had no agencies in the United States; that at that time there were no

restrictions and the merchandise was freely offered for sale to all persons in the ordinary course of trade at the invoice prices; and that, therefore, the invoice values are the export values of the machines.

The difficulty with this contention is that there is no proof in the record that the merchandise was freely offered for sale to all purchasers. The affiant in exhibit 1 states that they were "freely offered and sold to our distributing agencies in the United States, i. e. Rotaprint Machines, Inc., New York, and American Rotaprint Corporation, Cleveland, Ohio." Such statement does not show that they were freely offered for sale to all purchasers. It imports that they were freely offered to two firms only, one of which had an exclusive contract until it was canceled but continued to act as agent for the manufacturer and the other had been verbally informed that he would receive a written contract giving him a sole agency for certain territory as soon as the papers could be prepared.

Such evidence is not sufficient to establish an export value under the rulings in *United States* v. *Heemsoth-Kerner Corp. (Bauer Type Foundry, Inc.)*, 9 Cust. Ct. 580, Reap. Dec. 5722, and *United States* v. *Malhame & Co.*, 24 C. C. P. A. (Customs) 448, T. D. 48911. In the first case cited, there was a restriction on the sales to distributors but there was no restriction on the sales to consumers. The court said:

* * *. In our opinion it is apparent that the merchandise was not freely offered for sale in the United States to all purchasers, inasmuch as it was restricted and controlled in respect to sales to distributors. Even if the sales to consumers or users were regarded as unrestricted when part of the market was restricted, the market becomes restricted and controlled under the law.

In *United States* v. *Malhame & Co., supra*, the manufacturer restricted his sales in the United States to two purchasers only, i. e., its distributor and one other firm. The court held that proof of sales to such firms did not establish that there was an export value, because the merchandise was not freely offered to *all* purchasers.

We find that Rotaprint Machines, Inc., the importer in this case, was the exclusive agent of the manufacturer for a certain territory in eastern United States by virtue of a contract dated May 12, 1939, effective June 1, 1939, the terms of which were the same as those in a verbal agreement entered into prior to March 20, 1939; that another importer, American Rotaprint Corp., had an exclusive contract with the same manufacturer, dated March 20, 1935, covering the entire United States; that contract was canceled on May 1, 1938, but that importer continued to act as agent for the manufacturing firm and purchased goods from that firm in 1938, after the contract had expired, and also in 1939 up to the time a new contract was entered into with the manufacturing company simultaneously with the signing of the contract with Rotaprint Machines, Inc.;

that there is no proof of offers or sales for exportation to the United States made to persons other than to the two agents.

Upon the above state of facts, we hold that the importer failed to establish an export value, as claimed in his assignments of error, because it appears that the sales in the United States were restricted and there were no offers or sales to *all* persons. The judgment below is affirmed. Judgment will be entered accordingly.